EXHIBIT 3

## RESIDENT TRAINING AGREEMENT
## ASCENSION GENESYS HOSPITAL

**THIS RESIDENT TRAINING AGREEMENT** (the "**Agreement**") is effective June 17, 2020 (the "**Effective Date**"), by and between **ASCENSION GENESYS HOSPITAL**, a Michigan non-profit corporation ("**Hospital**"), and Ahmed Elzein, , ("**Resident**").

### WITNESSED

**WHEREAS,** Hospital is a Michigan nonprofit corporation whose charitable mission includes, among other things, (i) providing high quality, cost efficient and effective care to patients, and (ii) promoting the training of future physicians who, following such training, will be available to furnish medical services in the community served by Hospital and other communities in need of such services; and

**WHEREAS**, in connection with the foregoing, Hospital conducts certain advanced graduate medical, surgical, psychology and podiatric teaching programs; and

**WHEREAS**, Resident is a participant in the Hospital's post graduate training program (hereinafter referred to as the "**Program**"), designated as either an intern, a resident, or a fellow, whose education requires that Resident be directly involved in providing patient care under physician supervision in an acute care hospital, such as Hospital, and Resident has been accepted for clinical training in the Hospital's Program identified on Exhibit A attached hereto; and

**WHEREAS**, the activities of Resident in the Program are contemplated by the American Osteopathic Association Council on Postdoctoral Training ("**AOACOPT**"), the Accreditation Council for Graduate Medical Education ("**ACGME**"), the American Psychological Association ("**APA**") and/or the Council on Podiatric Medical Education ("**CPME**"), as applicable, each of which offer accreditation for medical education programs, such as the Program sponsored by Hospital.

**NOW THEREFORE**, in consideration of the above and their mutual promises and covenants contained herein, Hospital and Resident incorporate the foregoing recitals and agree as follows:

## I.    CONDITIONS PRECEDENT, APPOINTMENT AND TERM

A.    **Conditions Precedent**.  Although this agreement may be executed by the parties prior to the start of the contract year, it is expressly understood and agreed that this Agreement will be void unless:

(i)    Resident has successfully completed graduate medical education/training, as evidenced by a signed diploma, completed all immigration requirements, as applicable, and has obtained and maintained a State of Michigan physician's limited educational license or other applicable license prior to the start of each contract year.

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000021

(i)     If other than a first year resident physician, Resident has satisfactorily completed his/her prior graduate medical education/training, in the sole discretion of the Program Director or his/her representative/designee.

(iii)     Resident Physician successfully passes routine background check, drug screen, and physical examination.

B.     **Appointment**. Hospital hereby offers, and Resident accepts, appointment to the training Program at the Program level identified on Exhibit A attached hereto. The first Program level of training under this Agreement with Hospital is the "Initial Term." This Agreement will commence on the Effective Date and will continue for the Initial Term and the Renewal Term(s), if any, until Resident's completion of the Program (or the applicable Program level/year of training), subject to the non-renewal provisions of Section I.D. below and the termination provisions set forth in Section I.F of this Agreement. Notwithstanding the foregoing, in the event Resident fails to satisfy the conditions set forth in Sections III.B (i) and III.B (ii) of this Agreement within fifteen (15) days of the Effective Date (unless such period is extended by Hospital), Hospital will have the right to consider this Agreement to be null and void and will be released from any and all obligations under this Agreement.

C.     **Renewal of Appointment**. Upon Resident's successful completion of the Initial Term and the approval of the Program Director, the Hospital may reappoint Resident to the Program, and the parties may, by their mutual written agreement, extend the term of this Agreement for an additional period(s) for Resident's next level/year of training (each a "Renewal Term"). The parties acknowledge that neither Hospital nor Resident is obligated to renew this Agreement beyond the Initial Term or, if they occur, any Renewal Term(s). For each Renewal Term, Hospital will provide Resident with a replacement Exhibit A, which will become a part of this Agreement.

D.     **Non-Renewal by Hospital**. In the event Hospital elects not to renew this Agreement at the end of the Initial Term or any Renewal Term (except by reason of Resident's completion of the training Program), Hospital will furnish Resident with written notice of this decision at least one hundred twenty (120) days prior to the expiration of this Agreement; provided, however, that, if the primary reason(s) for non-renewal occurs within such notice period, Hospital will provide Resident with as much notice of Hospital's intent not to renew as the circumstances reasonably allow. In any event, Resident will be entitled, upon written request, to a statement of the reasons for Hospital's decision not to renew this Agreement. Resident will also be entitled to initiate the Specific Grievance Procedure set forth on Exhibit B, attached hereto and incorporated herein by reference. By executing this Agreement, Resident hereby expressly waives any right to seek redress under Exhibit B – Grievance Procedure due to the Resident's failure to advance to the next program year because of his/her non-compliance with Medical Education policies and program requirements.

E.     **Non-Renewal by Resident**. In the event Resident elects not to renew this Agreement at the end of the Initial Term or any Renewal Term, Resident will furnish Hospital with written notice of this decision at least sixty (60) days prior to the expiration of the then-current term.

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000022

F. **Termination**. This Agreement may be terminated

(i)     By mutual written agreement of the parties in the format attached as Exhibit C, which is incorporated by reference. In the event of mutual termination, Hospital will supply evidence of Resident's successfully completed rotations, if any, to be applied toward satisfying graduate medical education requirements.

(ii)    By either party, at the expiration of thirty (30) days in the event of a material breach of this Agreement, when the non-breaching party has provided the breaching party thirty (30) days prior written notice of the non-breaching party's intent to terminate the Agreement if the breach is not cured and the breaching party has failed to cure such breach.

(iii)   By Hospital on or upon the occurrence of any of the following:

(a)     the date upon which it has been determined by the Hospital that Resident, either by action or inaction, has committed or allowed to occur any action or course of action, which Hospital reasonably believes involved moral turpitude or is contrary to the interests of patient care or the general welfare of the Hospital;

(b)     the effective date upon which the Program ceases to be approved by the applicable accrediting body or agency (upon the loss of approval, Hospital will terminate the Program, at which time the Resident will be notified and granted credit for that portion of the Program completed and released thereon; the Resident will not be prohibited from immediately entering another graduate medical surgical or podiatric education program);

(c)     upon the revocation, suspension, denial or other disciplinary action by any federal or state regulatory agency regarding Resident's license to practice medicine or podiatry;

(d)     failure of Resident to pass any drug screen required by Hospital;

(e)     upon the death of Resident, or if Resident is incapacitated and unable to perform his or her resident duties due to illness or injury, immediately upon furnishing written notice to Resident upon the exhaustion of all leave to which Resident is entitled during such incapacity, pursuant to Hospital's then-applicable policies, unless otherwise precluded by law;

(f)     the effective date of closure of any residency in which Resident was enrolled (see, Section K, Program Closure/Reduction);

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000023

(g)    upon the failure of Resident to maintain current, valid and unrestricted authorization to work in the U.S. at all times during the term of this Agreement and/or failure to satisfactorily fulfill Part III, Resident's Obligations under the terms of this Agreement;

(h)    upon failure of Resident to maintain lawful nonimmigrant, immigrant or other valid U.S. status at all times during the term of this   Agreement;

(i)    personal conduct of Resident which, in Hospital's sole discretion, is seriously and clearly prejudicial to the best interest of the Hospital;

(j)    misrepresentation or provision of false or inaccurate information as it relates to Hospital operations, investigations, and/or patient care;

(k)    violation of a Hospital or Program policy/procedure, which constitutes grounds for termination under such policy/procedure.

(iv)    **Obligations Upon Termination**. Upon termination of this Agreement, Resident shall be entitled to receive compensation for services rendered prior to termination. Resident agrees to cooperate with Hospital in completion of all medical records or other documents or reports related to services rendered prior to termination and cooperate with Hospital with respect to any action filed on behalf of or against Hospital or Resident and otherwise fulfill all responsibilities under this Agreement for services rendered prior to termination. Prior to or upon the effective date of termination of this Agreement, Resident will settle all professional and financial obligations owed to Hospital, and return to Hospital all Hospital property including, but not limited to, keys, identification and/or parking cards, books, pagers, medical records, and equipment assigned to Resident.  Resident consents to the deduction from his/her final stipend payment any and all then-outstanding financial obligations of Resident owed to Hospital.

By signature below, Resident Physician hereby authorizes Hospital to deduct from his/her final stipend payment any and all then-outstanding financial obligations of Resident owed to Hospital.

Name  Ahmed Elzein,

G.    **Suspension**.  Notwithstanding any other provision of this Agreement to the contrary, the Program Director reserves the right to suspend Resident Physician summarily if it is determined, in the sole discretion of Hospital or Program Director, that suspension is or may be necessary in order to avoid an adverse effect on patient care or on the Hospital and/or its employees/patients.

Ascension (Elzein) 000024

H.     **Probation and Remediation**.   If Resident fails to satisfactorily meet the educational and/or clinical requirements of the Program at any time during any term of this Agreement, and if such failure does not constitute grounds for termination of this Agreement by Hospital pursuant to Section E above, the Program Director will provide Resident with no less than thirty (30) days' notice that Resident is being placed on academic probation and the terms therefore.  Placement on a probationary and/or remediation program is not a form of discipline and thus, the action is not subject to review pursuant to the Specific Grievance Procedure. Thereafter, if, in the opinion of the Program Director, the identified deficiencies are not corrected within a reasonable period of time, the Hospital may terminate this Agreement. Any Program time missed, whether due to Resident being placed on probation/remediation, or any disciplinary action taken against Resident by the Hospital, must be made up by Resident prior to completion of the Program and the issuance of a certificate.  In the event Resident has been suspended, Resident will be required to complete the current training period, which will include an extension of this period coincident with the duration of the suspension. Failure to complete the training period as extended will result in Resident being ineligible to advance to the next academic level/year or receive a certificate.

I.     **Notification of Breach or Termination**.  The parties hereto agree that in the event of a breach or termination of this Agreement, the parties will provide all required notices and/or documentation of such breach or termination to the applicable Program accrediting body or agency.

J.     **Duties Upon Termination of Agreement**.  Termination of this Agreement will not release or discharge either party from any obligation, debt or liability which has been previously accepted and remains to be performed on or after the date of termination.

K.     **Program Closure/Reduction.**  The Hospital reserves the sole right to close or reduce the size of one or more residency programs.  Hospital will notify its intention of this program change, including its timing, as soon as possible to the GMEC, the DIO and the affected residents.  Continuances will be decided solely on an individual basis and at the discretion of Hospital.  In the event Resident is not granted a continuance in the Program, Hospital will assist Resident in enrolling in a similar accredited program in which the Resident can continue his or her clinical education and training.

## II.   **HOSPITAL'S OBLIGATIONS**

A.     **Training**.  Hospital will provide Resident education and training in the clinical Program identified on Exhibit A.  Hospital will ensure that, at all times, the Program meets the accreditation standards established by either the AOACOPT, the ACGME, the APA and/or the CPME, and any requirements for residency training specified by the board(s) of appropriate professional medical societies.  Hospital will also ensure that Resident is provided an educational environment conducive to his/her clinical training, which will include access to on-call rooms; laundry services for only Hospital issued scrubs, adequate patient support services (*e.g.*, intravenous, phlebotomy, and laboratory services); laboratory, pathology, and radiological information systems; and Hospital's medical records system.

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000025

B.      **Duties of the Resident Defined**.  The specific duties and responsibilities of the Resident as they relate to participation in the Program will be defined and made available by the Hospital to the Resident through the Program Director, in accordance with the aforementioned applicable accreditation standards.

C.      **Policies and Procedures**.  Hospital, through or in collaboration with the Program Director, will be responsible for developing, maintaining and clearly delineating written policies and procedures for evaluating the performance of all residents appointed to the Program.  Such policies and procedures will address (i) limits on the number of hours that can be worked in a clinical setting during a defined period; (ii) "moonlighting"; (iii) conditions for reappointment and promotion; (iv) grievance and due process procedures; (v) professional liability insurance, including coverage for claims filed after Program completion; (vi) leaves of absence; (vii) the effect of a leave on satisfying criteria for Program completion; (viii) other professional activities outside the Program; (ix) counseling, medical, and psychological support services; (x) physician impairment and substance abuse; (xi) sexual harassment; (xii) closure of training programs or reduction in approved resident positions, and (xiii) the process for monitoring resident's compliance with the foregoing policies and procedures.  Hospital will furnish Resident with a copy of Hospital's Medical Education Policies and Procedures Manual (the "Manual") and those policies specific to the Program.

D.      **Orientation.**  Hospital will provide Resident approximately two weeks of orientation, and Resident will be required to complete such orientation prior to the commencement of the Initial Term, unless an exception is approved in writing by the Program Director.  Hospital will provide Resident an orientation stipend for each week of completed orientation on a prorated basis. The orientation stipend is paid to Resident in addition to the annual stipend (both stipends are set forth on Exhibit A attached hereto) and will be paid to Resident with Hospital's first pay period following the completion of orientation.  In addition to the stipend, Resident will receive benefits during the orientation period, in accordance with Section II.F below and Exhibit D attached hereto.

E.      **Compensation**.  During the Initial Term of this Agreement, Resident will be paid a stipend in the amount set forth on Exhibit A.  Resident will be paid on a bi-weekly basis, in accordance with Hospital's payroll policies.  The stipend for a Renewal Term, if any, will be communicated to the Resident by the Hospital prior to the Renewal Term and specified in a replacement Exhibit A, signed by the parties and the Program Director.  No compensation of any kind or nature will be paid to, or accepted by, Resident from patients or third parties for any services rendered pursuant to this Agreement.

F.      **Benefits**.  Hospital will provide Resident those benefits listed on Exhibit D, attached hereto.  Except as otherwise indicated on Exhibit D, or as provided by applicable Hospital policies, such benefits will only be provided for so long as Resident is a participant in good standing in the Program.  Hospital reserves the right to revise or modify the composition, type and/or levels, **or terminate the** benefits set forth in Exhibit D at any time during the period of this Agreement. Any such revision or modification will become effective upon written notice to Resident.

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000026

G. **Absences**. Resident Physician must notify the Program Director or his/her designee regarding any absence for any reason. Illness causing absence for longer than two days must be certified by Resident's private physician or hospital employee health department. Absences beyond those days allotted for sickness, vacation and holidays, approved or not, regardless of purpose, may result in probation/remediation and/or disciplinary action, up to and including discharge, unless otherwise precluded by applicable law. Residents who are absent because of a qualifying disability may request reasonable accommodation pursuant to the then-applicable Hospital policy guidelines.

b.

H. **Certificate**. Upon Resident's satisfactory completion of the Program, Hospital will present, or cause to be presented, to Resident a Certificate of Residency, formally acknowledging and verifying Resident's completion of the Program. **Any Program time Resident misses due to (i) probation/remediation or disciplinary action, or (ii) leave taken beyond the time allotted for sickness, vacation and holidays, approved or not, regardless of purpose, must be made up prior to completion of the Program and the issuance of a certificate.**

## III. <u>RESIDENT'S OBLIGATIONS</u>

A. <u>**Standards for Services**</u>. Resident agrees to perform duties assigned to him/her by the Hospital through the Director of Medical Education and/or the Program Director. Resident will conduct himself/herself in a professional manner, which at all times will meet/comply with the following:

(i) The applicable accrediting organization(s) for Resident's Program (identified on <u>Exhibit A</u>);

(ii) The Hospital's Bylaws;

(iii) The standards, policies and procedures adopted by the Hospital as they specifically apply to the residency Programs, including, but not limited to, the policies identified in the Manual and/or the PolicySTAT database;

(iv) The Bylaws and Rules and Regulations of the Hospital's Medical Staff as they apply to Residents;

(v) All applicable policies and practices of Hospital which apply to conduct or the performance of services on any premises owned or controlled by Hospital;

(vi) The Hospital's Mission, Vision and Values; and

(vii) All applicable federal, state, and local laws, rules, regulations and standards, including without limitation, infection control policies of the Federal Occupational Safety and Health Administration, and administrative rules of the Michigan Department of Community Health.

A failure to follow the foregoing requirements and standards will constitute a breach of this Agreement and may, at the discretion of Hospital, result in a written notice of breach or

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000027

termination as set forth in Section I.F.  Resident agrees that, pending an investigation and decision regarding allegations of non-compliance with applicable requirements or standards, the Program Director, the Director of Medical Education, or their respective designee(s) may immediately suspend Resident.

B.  **Resident Requirements and Activities**.

(i)  Prior to performing Program-related services pursuant to this Agreement, Resident will obtain, and maintain in effect at all times thereafter, (a) a license to practice allopathic or osteopathic medicine or podiatry, as applicable, in the State of Michigan; and (b) Michigan and federal controlled substance licenses or registrations.  Resident will immediately notify the Program Director regarding any action taken against any of the foregoing licenses or registrations, or of any investigation or disciplinary action initiated or taken against Resident of any kind or nature by any governmental agency, including but not limited to, the loss of Resident's license to practice medicine or podiatry, or any investigations regarding, or proceedings to suspend or revoke, such license.  In the event Resident fails to maintain a valid, unrestricted (except as appropriate for level of training) license, Hospital may immediately terminate this Agreement.

(ii)  Prior to performing professional medical services pursuant to this Agreement, Resident will complete a physical examination by a physician of Hospital's choice, at Hospital's expense, and demonstrate, to Hospital's reasonable satisfaction, based on such physical examination, that Resident is able to provide the services required of Resident under this Agreement.

(iii)  Resident hereby agrees that during the term of this Agreement and while performing all patient care and Program-related services hereunder, Resident will

(a)  engage only in those activities of a professional nature which have been approved by the Program Director, Hospital and the applicable accrediting body or agency;

(b)  be subject to, and abide by, Hospital's policies pertaining to drug screening of employees, as such may be amended from time to time (the "Resident/Intern/Fellow Impairment Policy," as contained in the Manual). Failure to pass any drug screen required by Hospital pursuant to and in compliance with the provisions of the Resident/Intern/Fellow Impairment Policy will result in immediate termination of this Agreement;

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000028

(c)     comply with (i) all applicable federal, state, and local laws, rules, regulations and standards, including, without limitation rules and regulations relating to the Health Insurance Portability and Accountability Act of 1996, as amended ("**HIPAA**"), (ii) all rules, regulations and policies and procedures of Hospital, Hospital's medical staff (the "**Medical Staff**"), and the Program, as they may exist from time to time, including but not limited to policies and procedures governing time entry logs and access to patient medical records; and (iii) all orders and assignments issued by the Director of Graduate Medical Education, the Program Director, appropriate medical staff, resident faculty and supervisory personnel.

c.

(d)     acknowledge that, in the course of his/her employment, Resident Physician may receive certain information that is confidential and/or proprietary to Hospital, including, but not limited to, letters, certain patient records, contracts, reports, manuals, mailing lists, patient lists, employee lists, advertising materials, marketing materials, equipment, keys and all other materials or records of any kind relating to Hospital business ("Confidential Information"). Resident Physician further acknowledges and agrees that all such Confidential Information, and all physical embodiments thereof, are confidential to and shall be and remain the sole and exclusive property of Hospital.  Upon termination of this Agreement, regardless of reason, Resident Physician shall promptly deliver to Hospital all property belonging to Hospital including, without limitation, all Confidential Information, and all physical embodiments thereof that may be in the Resident Physician's custody, control or possession expiration or termination of this Agreement.

(e)     agree that Resident Physician will not, either during the term of his or her employment by Hospital or at any time thereafter, without the prior written consent of Hospital, disclose, duplicate, transport, or make available any Confidential Information to any person or entity, nor shall he or she make or cause to be made either on his or her own behalf or on behalf of others, any use of such Confidential Information other than in the proper performance of his/her duties hereunder.  Resident understands and acknowledges that Resident's duty to safeguard such Confidential Information continues beyond Resident's participation in the Program and survives the termination of this Agreement.

C.     **Exclusion**.  Resident represents and warrants to Hospital that Resident (i) is not nor is about to be excluded, debarred or otherwise ineligible to participate in federal health care programs "Federal Healthcare Programs"), (ii) has not been convicted of a criminal offense related to the provision of healthcare items or services, and (iii) is not under investigation or otherwise

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000029

aware of any circumstances which may result in Resident being excluded from participation in Federal Healthcare Programs. This is an ongoing representation and warranty during the term of this Agreement; Resident will immediately notify Hospital within one (1) business day of any change in the status thereof. The listing of Resident on the Office of Inspector General's exclusion list (OIG website) or the General Services Administration's Lists of Parties Excluded from Federal Procurement and Nonprocurement Programs (GSA website) for excluded individuals and entities shall constitute "exclusion" for purposes of this Section III.C. In the event Resident is debarred, suspended or excluded from any of the Federal Healthcare Programs, this Agreement will terminate immediately and automatically upon receipt of Resident's notification. For the purposes of this Section III.C., the term "Federal Healthcare Program" means the Medicare program, the Medicaid program, the Maternal and Child Health Services Block Grant program, the Block Grants for State for Social Services program, any state Children's Health Insurance program, or any similar program.

D. **Outside Professional Activities**. It is understood and agreed by both parties that Resident will devote his/her full-time and best professional efforts to the performance of his/her duties under this Agreement and that Hospital will not require Resident to engage in professional activities outside the scope of the Program (collectively "Outside Activities"). Moreover, Resident will not engage in Outside Activities, unless Resident complies with Hospital's "moonlighting" policy, including but not limited to, the requirement that Resident maintains, at all times he/she is engaged in Outside Activities, a permanent license to practice medicine. Resident shall not function as an agent on behalf of the Hospital in the performance of such outside activities. As a result, Resident is prohibited from using any hospital equipment, uniforms, supplies, prescription pads, or forms which bear the logo or name of "Genesys" for use in such outside activities. Further, the Genesys professional liability insurance coverage will not apply or extend to insure Residents for any such outside activities whatsoever.

IV. **GENERAL**

A. **Sponsorship of Visas**. Resident acknowledges that, pursuant to Hospital policy, Hospital will not sponsor an H1-B visa for Resident.

B. **Equal Opportunity and Access**. Resident acknowledges that it is the Hospital's policy to provide equal opportunity and access to all persons, regardless of race, religion, gender, disability or other classification within federal, state, and local statutes, regulations or ordinances, and Resident agrees to act in accordance with such policy. Disabled Residents requesting Reasonable Accommodation should refer to then applicable Hospital policy guidelines concerning "Reasonable Accommodation" and/or "Leave of Absence."

C. **Corporate Compliance.** The Hospital has in place a Corporate Compliance Program ("Program") which has as its goal to ensure that the Hospital complies with federal, state and local laws and regulations. The Program focuses on risk management, the promotion of good corporate citizenship, including the commitment to uphold a high standard of ethical and legal business practices, and the prevention of misconduct. Resident acknowledges the Hospital's commitment to corporate compliance and agrees to conduct all services pursuant to this Agreement in accordance with the underlying philosophy of corporate compliance.

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000030

D.    **Religious Directives.**   Resident acknowledges that the Hospital conducts its operation in a manner consistent with the Ethical and Religious Directives for Catholic Health Care Services as promulgated by the United States Conference of Catholic Bishops, Washington D.C., of the Roman Catholic Church or its successor.  While performing services pursuant to this Agreement, Resident will act in accordance with these Ethical and Religious Directives.

E.    **Severability and Interpretation**.  If any one or more of the provisions of this Agreement are held invalid by any court of competent jurisdiction or are voided or nullified for any reason, then each such provision will be interpreted to the fullest extent possible so as to be valid and effective, the remaining provisions and paragraphs will continue in full force and effect, and this Agreement as so construed will be binding on the parties so as to carry out the intent and purposes of the parties as nearly as possible.

F.    **Waiver**.  The waiver by Hospital of a breach of any provision of this Agreement by Resident will not operate or be construed as a waiver of any subsequent breach by Resident.

G.    **Disclaimer**.  The parties hereto acknowledge that an accrediting organization or agency of the Program is neither a party to nor an intended beneficiary of this Agreement.

H.    **Amendments**.  The terms and conditions of this Agreement may be amended only by the mutual written Agreement of the parties hereto.

I.    **Merger**.  This Agreement constitutes and expresses the entire Agreement of the parties and supersedes all prior Agreements and understandings, whether written or oral, between the parties.

J.    **Governing Law**.  This Agreement will be governed by and construed in accordance with the laws of the State of Michigan, regardless of applicable conflict of law principles which may otherwise apply.

K.    **Execution** – This Agreement will not be effective until it is signed by the appropriate Hospital representative for the Program.

L.    **Captions**.  The captions or headings in this Agreement are inserted herein for convenience of reference only and will not be construed as describing, defining or limiting the scope or intent of the provisions of this Agreement.

*[signatures to follow]*

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000031

**IN WITNESS THEREOF,** the parties hereto have executed this Agreement to be effective as of the Effective Date.

| | |
|---|---|
| "Hospital" | **ASCENSION GENESYS Hospital,**<br>a Michigan non-profit corporation |

Signature: *Christopher J. Palazzolo*

Print Name:  Christopher J. Palazzolo

Its: President & CEO
     Ascension Genesys Hospital and
     Ascension Providence Rochester Hospital

| | |
|---|---|
| **"Program Director"** | Signature: *Barbara Pawlaczyk* |

Print name: Barbara Pawlaczyk, MD

| | |
|---|---|
| **"Resident"** | Signature: |

Print Name: Ahmed Elzein,

Ascension (Elzein) 000032

<u>**Exhibit A**</u>

- **<u>Program</u>:** Internal Medicine

- **<u>PGY/OGME Level</u>:** Level 1

- **<u>Stipend</u>:** The Resident's stipend during the period Resident is completing this PGY-1 GME Level (i.e., July 1, 2020 to June 30, 2021) is <u>$52,013</u>.  The Resident's stipend during the period Resident is completing the mandatory orientation period (i.e., June 17, 2020 to June 30, 2020), unless an exception is otherwise approved in writing by the Program Director, is <u>$800.00</u>, to be paid on a prorated basis, contingent on Resident attendance. The total stipend to be paid during the Term of this Agreement is <u>$52,813</u>.

- **<u>Date of Initial Term ("Term")</u>:**  June 17, 2020 – June 30, 2021 (which <u>includes a</u> mandatory two (2) week orientation period).

- **<u>Mandatory Orientation Period</u>:** June 17, 2020 - June 30, 2020.

**[Signatures Required for Exhibit A for Each Renewal Term]**

"Hospital"       ASCENSION GENESYS HOSPITAL,
a Michigan non-profit corporation

*Christopher J. Palazzolo*

Signature:

Print Name:  Christopher J. Palazzolo

Its:  President & CEO
     Ascension Genesys Hospital and
     Ascension Providence Rochester Hospital

"Program Director"       *Barbara Pawlaczyk*

Signature:

Print name: Barbara Pawlaczyk, MD

"Resident"       Signature:

Print Name: Ahmed Elzein,

Page 13 of 20

Ascension (Elzein) 000033

## Exhibit B
## GRIEVANCE PROCEDURE

This **Grievance Procedure** is applicable to matters related to Resident's contract, employment and relationship with the Hospital, and any and all complaints or grievances of Resident related thereto.  Notwithstanding the provisions of any other policy, practice or procedure established or promulgated by the Hospital, this **Grievance Procedure** is the exclusive procedure and means of redress for any complaint, claim or grievance of Resident against the Hospital with respect to his or her contract, employment and/or relationship with the Hospital.   The **General Grievance Procedure** shall apply to all complaints, claims or grievances except those covered by the **Specific Grievance Procedure for Non-Advancement, Suspension or Dismissal**. Complaints, claims or grievances involving the non-advancement (non-renewal), suspension or dismissal of Resident from the Program, shall be governed by the **Specific Grievance Procedure for Non-Advancement, Suspension or Dismissal**.

If Resident does not present a particular complaint, claim or grievance within the appropriate time limits and in the manner(s) set forth in this procedure, such complaint, claim or grievance will be deemed to have been waived. All time limits are referenced as calendar days. If Resident does not request a decision, hearing or appeal (whichever is applicable) on the decision on a particular complaint, claim or grievance within the appropriate time limits and in the manner(s) set forth in this procedure, such complaint, claim or grievance will be deemed to have been fully and finally resolved by the preceding decision on the grievance.

### GENERAL GRIEVANCE PROCEDURE

**Step 1:**     No later than fourteen (14) days after Resident becomes aware or should have become aware of the events giving rise to the complaint, claim or grievance (hereinafter "grievance"), he/she may submit the grievance in writing to the Program Director. The Program Director will schedule a meeting with Resident to discuss the grievance within twenty-one (21) days after receiving the written grievance.  The Program Director will provide a written decision on the grievance to Resident within ten (10) days after said meeting.

**Step 2:**     If Resident is not satisfied with the decision of the Program Director, Resident may appeal in writing to the Director of Medical Education no later than seven (7) days after his/her receipt of the decision of the Program Director.  Within fourteen (14) days after receipt of this appeal, the Director of Medical Education will consider the written appeal and the written decision of the Program Director and issue a decision in writing on the appeal.   The decision of the Director of Medical Education will be final and binding on both Resident and Hospital.

### SPECIFIC GRIEVANCE PROCEDURE
### FOR NON-ADVANCEMENT, SUSPENSION OR DISMISSAL

**Step 1:**     No later than fourteen (14) days after Resident became aware or should have become aware of a decision or incident involving Resident's non-advancement in,

Page 14 of 20

Ascension (Elzein) 000034

or suspension or dismissal from, the Program, he/she may submit the complaint, claim or grievance (hereinafter "the grievance") in writing to the Program Director, who will schedule a meeting with Resident to discuss the grievance within twenty-one (21) days after receiving the written grievance, and will provide a written decision within ten (10) days after meeting with Resident. A copy of the **Grievance Procedure** and this **Specific Grievance Procedure for Non-Advancement, Suspension or Dismissal** shall be provided to Resident along with the written decision on the grievance. Such copy and written decision may be delivered personally to Resident or sent via certified mail to Resident's last known address.

**Step 2:**   If Resident is not satisfied with the decision of the Program Director, Resident may, within seven (7) days of his/her receipt of the decision of the Program Director, deliver a written request for a hearing on said decision to the Director of Medical Education, who will provide the Program Director with a copy of the request. The request for hearing shall include the factual basis and other grounds for the grievance and the remedy sought.

Within twenty-one (21) days after the request is received by the Director of Medical Education, a committee of three persons will be appointed to conduct a hearing on the grievance. The composition of this committee will be:

> (a)   the Director of Medical Education or his/her designee, who will be the committee chairperson and a member of the Medical Staff with active medical staff privileges at Hospital;
>
> (b)   one member of the Medical Staff appointed by the Director of Medical Education; and
>
> (c)   one member of the Medical Staff appointed by Resident. It shall be the responsibility of Resident to obtain the consent of said Medical Staff member to act as a committee member prior to appointing said member to the committee. Resident shall inform the Director of Medical Education of said appointment in writing within twenty-one (21) days after the written request for hearing is received by the Director of Medical Education. If Resident fails to make said appointment within the time and in the manner specified above, he/she shall be deemed to have waived the right to appoint any member of the committee. In such event, the Director of Medical Education shall appoint a member of the Medical Staff to serve as the final member of the three (3) person committee.

None of the members of this committee will have participated in the decision to be grieved.

Within thirty (30) days of the selection of the three person committee, the committee will conduct a hearing on the grievance. Resident shall be given written

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000035

notice of the names of the committee members and of the date, time and place of the hearing at least fourteen (14) days prior to the hearing. Said notice shall be deemed properly given by sending same within the time specified to Resident's last known address via ordinary mail. Resident and the Program Director or his/her designee (hereinafter "Program Director") shall be present at the hearing. Any failure of Resident to appear at the date, time and place of the hearing shall constitute a waiver of his/her right to hearing and any appeal on the grievance. The committee chair shall determine the order of presentation at the hearing. Resident and Program Director shall each be permitted to offer the oral statements of no more than two witnesses, and written statements and documentary evidence as deemed appropriate by the committee. Each side shall be limited to one hour each to present its case, with an additional 15 minutes for rebuttal for each side. The committee may modify any of the above limits if it deems extraordinary circumstances warrant such modification. The committee members may ask questions of Resident, Program Director or any witness attending the hearing. The rules of evidence do not apply to the hearing, and the committee may consider any evidence or statements that it deems to be relevant and of such a nature that responsible persons in the conduct of serious affairs would rely upon. Resident and the committee may consult with their respective legal counsel in preparation for the hearing and on other matters related thereto, but no attorney may be present for either Resident or the committee during the conduct of the hearing. The hearing shall be transcribed or recorded.

After the conclusion of the hearing, the committee shall conduct private deliberations, and, within twenty-one (21) days after the conclusion of the hearing shall issue a written decision on the grievance. The written decision shall be adopted by a majority vote of the committee.

**Step 3:** If either Resident or the Director of Medical Education is not satisfied with the decision of the committee, such party may, within seven (7) days of his/her receipt of the decision of the committee, appeal in writing to the President of the Medical Staff. The grounds and/or reasons for the appeal, and the relief requested, shall be stated in the written appeal. The President of the Medical Staff shall notify the non-appealing party of the appeal within fourteen (14) days of the appeal by providing a copy of the written appeal to said party. Within fourteen (14) days after the appeal is received by the President of the Medical Staff, he/she or his/her designee shall appoint an appellate committee of three persons to consider the written appeal, any transcript or recording of the Step 2 hearing and all other documents used by the Step 2 committee. This Step 3 appellate committee will be composed of medical staff members or administrative, management or supervisory staff who have not participated in the processing or decision of the grievance at Steps 1 or 2, and shall be appointed by the President of the Medical Staff, except that the Chief Executive Officer of the Hospital may unilaterally elect to serve on this appellate committee. The non-appealing party may provide a written response to the written appeal no later than seven (7) days after his/her receipt of said appeal. No further oral

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000036

statements or additional evidence shall be considered on appeal, except upon extraordinary circumstances as determined by the appellate committee.

The appeal shall be considered as soon as practicable after the procedural actions and/or expiration of the time limits specified above.  Within seven (7) days after consideration of the appeal, the committee will issue its written decision.  The written decision shall be adopted by a majority vote of the committee.  This decision will be final and binding on both Resident and Hospital.

Page 17 of 20

Ascension (Elzein) 000037

**Exhibit C**
**WRITTEN RELEASE BY MUTUAL CONSENT**

       The parties hereby mutually consent to the release of their respective contractual obligations set forth in the Resident Training Agreement dated_____, such release to take effect on _____.


**Resident:**

_____
Signature

_____
Printed Name

_____
Date


**Ascension Genesys Hospital**

_____
Signature

_____
Printed Name

_____
Date


Page 18 of 20

Ascension (Elzein) 000038

**Exhibit D**
**SUMMARY OF CURRENT RESIDENT BENEFITS**

(a)     A meal allowance of $\underline{\$2,400.00}$ per year which is included in the total stipend as set forth on Exhibit A.

(b)     Resident is allocated twenty (20) days of paid time off ("PTO") during the program year to be used at the Resident's discretion, providing there is timely receipt of the prior approval from the Program Director.  Approval will be based, to a significant extent, upon an assessment of the scheduling, timing, and needs of the program.  Additional conference time may be granted at the discretion of the Program Director.

(c)     Maternity, parental, and bereavement time off in accordance with Hospital's benefit policies, as amended from time to time.  Resident may refer to the Manual and/or then applicable Hospital policy guidelines for a description of Hospital's leave policies.

(d)     Other medical or personal unpaid leave may be granted at the discretion of the Program Director, consistent with policies promulgated by either the AOACOPT, the ACGME, the APA or the CPME, as applicable, and Hospital's applicable policy guidelines as amended from time to time, including but not limited to Leave of Absence policy, "Family and Medical Leave of Absence" ("FMLA") policy and Reasonable Accommodation policy, or as otherwise required by law.  Such leave will be granted only after Resident has exhausted all of his/her other paid time off benefits.  The necessity for make-up time and/or additional training will be determined by the Program Director, consistent with policies promulgated by the AOACOPT, the ACGME, the APA or the CPME, as applicable.  Access to information concerning certification eligibility by the relevant organizations can be accessed by Resident through each organization's website: ACGME (www.acgme.org); AOA (www.osteopathic.org); APA (www.apa.org), ABMS (www.abms.org): (www.apma.org).

(e)     Hospitalization, medical, dental, and optical insurance for Resident and his/her dependents in accordance with Hospital's benefit policies, as amended from time to time and subject to such payments by Resident as may be required under such policies.  Resident may refer to the applicable benefit plan documents for a description of current benefits.  Coverage will begin on the first recognized day of their program.

(f)     Term life, short term and long-term disability insurance in accordance with Hospital's benefit policies, as amended from time to time and subject to such payments by Resident as may be required under such policies. As of January 1, 2010, any new Resident admitted to the Program will not be eligible for long term disability insurance coverage.

(g)     Professional liability insurance, which will cover Resident solely while performing his/her duties and responsibilities hereunder, and will be provided in accordance with Hospital's policies governing similarly situated residents, as amended from time to time.  Such liability coverage includes legal defense and protection against awards from claims reported or filed after the completion of the Program, if the alleged act(s) or omission(s) of Resident are within the scope of the Program.  An extended reporting period, i.e., tail

Document Ref: TIEU6-XBHVJ-S5R8Q-YVWUZ

Ascension (Elzein) 000039

coverage, may be provided by Hospital, at Hospital's sole discretion, upon request by Resident.

(h)    Worker's Compensation Insurance, consistent with Michigan law and Hospital's benefit policies, as amended from time to time.

(i)    Three lab coats in the first year with an additional one lab coat each subsequent year.

(j)    Laundry services are provided only for hospital scrubs.  The scrubs are obtained through the Hospital's Pyxis System.

**[NOTE:  The information contained in this Exhibit D is in summary form and is current as of the Effective Date.  These benefits are subject to change from time to time at the discretion of Hospital.]**

4814-6540-3062, v. 1

Page 20 of 20

Ascension (Elzein) 000040



# Signature Certificate

Document Ref.: TIEU6-XBHVJ-S5R8Q-YVWUZ

Document signed by:

**Ahmed Elzein**
Verified E-mail:
ahmedelzein92@gmail.com

IP: 50.228.206.180    Date: 22 Jun 2020 18:27:21 UTC

**Christopher Palazzolo**
Verified E-mail:

IP: 199.178.222.51    Date: 23 Jun 2020 13:16:47 UTC

*Christopher J. Palazzolo*

**Barbara Pawlaczyk**
Verified E-mail:

IP: 204.80.212.1    Date: 24 Jun 2020 15:56:50 UTC

*Barbara Pawlaczyk*

Document completed by all parties on:
24 Jun 2020 15:56:50 UTC
Page 1 of 1

Signed with PandaDoc.com

PandaDoc is the document platform that boosts your
company's revenue by accelerating the way it transacts.