# EXHIBIT 16

⚠️ Caution
As of: March 1, 2024 3:06 AM Z

# Klepper v. First Am. Bank

United States Court of Appeals for the Sixth Circuit

July 30, 1990, Argued ; October 4, 1990, Decided ; October 4, 1990, Filed

No. 89-6380

**Reporter**
916 F.2d 337 *; 1990 U.S. App. LEXIS 17437 **; 18 Fed. R. Serv. 3d (Callaghan) 13

Irwin Klepper, Plaintiff-Appellant, v. First American Bank, Defendant-Appellee

**Prior History:** [**1] On Appeal from the United States District Court for the Eastern District of Kentucky; D.C. No. 89-00041; Wilhoit, Jr., Judge.

**Disposition:** Affirmed in Part; Reversed and Remanded in Part.

## Core Terms

district court, punitive damages, malice, arbitration, oppression, claim for punitive damages, attorney's fees, partnership, summary judgment, compensatory and punitive damages, subject matter jurisdiction, jurisdictional amount, incidental damages, summary judgment motion, construction contract, compensatory damages, clear and convincing evidence, grant summary judgment, contends, genuine issue of material fact, remaining claim, discovery, merits

## Case Summary

**Procedural Posture**
Appellant business owner sought review of the order of the United States District Court for the Eastern District of Kentucky, which granted summary judgment in favor of appellee bank, in appellant's suit for compensatory and punitive damages arising from appellee's alleged tortious interference with a partnership agreement.

**Overview**

Appellant business owner's partner sold out to appellee bank. Appellant obtained an arbitration award against the partner for breach of contract, then brought suit against appellee for compensatory and punitive damages for tortious interference with the partnership agreement. Appellee filed a summary judgment motion, which the district court granted because an arbitration award estopped a duplicate award for compensatory damages, appellant failed to offer clear and convincing proof that appellee acted with oppression, fraud, and malice, as required under Ky. Rev. Stat. Ann. § 411.184 to support his punitive damage claim, and the amount in controversy in the remaining claim was insufficient for diversity jurisdiction. Appellant sought review. The court reversed as to the claim for lack of subject matter jurisdiction because once the matter was within the district court's jurisdiction, it could not lose jurisdiction from subsequent events. The court affirmed the judgment with respect to the claims for compensatory and punitive damages.

**Outcome**
The court reversed with respect to the summary judgment on the basis of insufficient amount in controversy because once the district court had subject matter jurisdiction over the matter, it could not lose jurisdiction from subsequent events. The court affirmed the summary judgment on the claims for compensatory and punitive damages.

## LexisNexis® Headnotes

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > Remedies > Damages > Punitive Damages

*HN1*[🔽] **Subject Matter Jurisdiction, Jurisdiction Over Actions**

If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action.

Civil Procedure > ... > Diversity Jurisdiction > Amount in Controversy > Determination

Civil Procedure > ... > Diversity Jurisdiction > Amount in Controversy > General Overview

### HN2[ ] Amount in Controversy, Determination

In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount.

Civil Procedure > Remedies > Damages > Punitive Damages

Torts > ... > Commercial Interference > Contracts > General Overview

Torts > ... > Types of Damages > Punitive Damages > General Overview

Torts > ... > Punitive Damages > Measurement of Damages > Judicial Review

Torts > ... > Types of Damages > Punitive Damages > Aggravating Circumstances

### HN3[ ] Damages, Punitive Damages

In Kentucky, punitive damages are governed solely by statute. *Ky. Rev. Stat. Ann. § 411.184(5)*. The statute provides that a plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice. *Ky. Rev. Stat. Ann. § 411.184(2)*.

Civil Procedure > ... > Jurisdiction > Subject Matter Jurisdiction > Amount in Controversy

### HN4[ ] Subject Matter Jurisdiction, Amount in Controversy

Claims can be aggregated to satisfy the jurisdictional amount requirement.

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

### HN5[ ] Subject Matter Jurisdiction, Jurisdiction Over Actions

Once jurisdiction has properly attached, it cannot be ousted by subsequent events.

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

Evidence > Burdens of Proof > Clear & Convincing Proof

Civil Procedure > ... > Summary Judgment > Appellate Review > General Overview

Civil Procedure > ... > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

Civil Procedure > Appeals > Standards of Review > De Novo Review

### HN6[ ] Burdens of Proof, Nonmovant Persuasion & Proof

On an appeal from a summary judgment, the court reviews the record de novo to determine whether there are genuine issues of material fact. *Fed. R. Civ. P. 56(c)*. The court assesses the record in the light most favorable to the non-movant, drawing all reasonable inferences in its favor. The non-movant, in order to prevail, however, must show sufficient evidence to create a genuine issue of material fact. The showing of a mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the movant. Where clear and convincing evidence is required to prove a claim, the court must examine the evidence and determine whether a jury could find for the plaintiff under this more stringent standard.

Civil Procedure > ... > Preclusion of Judgments > Estoppel > Collateral Estoppel

### HN7[ ] Estoppel, Collateral Estoppel

Only satisfaction of an award against a joint tortfeasor could raise a bar precluding actions against other tortfeasors.

Torts > Intentional Torts > General Overview

### HN8[ ] Torts, Intentional Torts

Malice is defined, in relevant part, as conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff. Ky. Rev. Stat. Ann. § 411.184(1)(c).

Torts > Intentional Torts > General Overview

### HN9[ ] Torts, Intentional Torts

Oppression is defined as conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship. Ky. Rev. Stat. Ann. § 411.184(1)(a).

Torts > ... > Fraud & Misrepresentation > Nondisclosure > Elements

Torts > Business Torts > Fraud & Misrepresentation > General Overview

### HN10[ ] Nondisclosure, Elements

Fraud is defined as an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff. Ky. Rev. Stat. Ann. § 411.184(1)(b).

Civil Procedure > Pretrial Matters > Continuances

Civil Procedure > Discovery & Disclosure > General Overview

Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

Civil Procedure > ... > Summary Judgment > Opposing Materials > General Overview

Civil Procedure > ... > Summary Judgment > Supporting Materials > General Overview

### HN11[ ] Pretrial Matters, Continuances

Fed. R. Civ. P. 56(f) sets forth the method for opposing summary judgment based on insufficiency of discovery: Should it appear, from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**Counsel:** Counsel for Plaintiff-Appellant: Gordon Dill, Dill & Scott, Ashland, Kentucky.

Counsel for Defendant-Appellee: John A. West, Greenebaum, Doll & McDonald, Lexington, Kentucky.

**Judges:** H. Ted Milburn and Ralph B. Guy, Jr., Circuit Judges, and William H. Timbers,[*] Circuit Judge.

**Opinion by:** TIMBERS

## Opinion

 [*339] TIMBERS, Circuit Judge

Appellant Irwin Klepper appeals from a summary judgment in favor of appellee First American Bank ("First American") entered October 13, 1989 in the Eastern District of Kentucky, Henry R. Wilhoit, Jr., District Judge, dismissing the complaint.

The court held that Klepper's claim for compensatory damages was barred by a previous recovery in a related arbitration proceeding. Klepper's second claim for punitive damages was rejected as insufficient under Kentucky law. Having disposed of the compensatory and punitive damage claims, the court [**2] held that plaintiff's remaining claim of $ 5,000 for incidental damages and attorney's fees was inadequate to support

---

[*] Honorable William H. Timbers of the United States Court of Appeals for the Second Circuit, sitting by designation.

subject matter jurisdiction.

On appeal, Klepper contends that the court erred in dismissing the claims for compensatory and punitive damages. He further contends that the court did have subject matter jurisdiction to hear the claims.

For the reasons which follow, we affirm that part of the judgment which dismissed the claims for compensatory and punitive damages, but we remand the case with respect to the remaining claim for a determination on the merits.

I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on appeal.

In 1980, Klepper formed a partnership with David Osborne, his son-in-law. Klepper was a limited partner with a twenty-percent interest, while Osborne was the general partner who owned an eighty-percent interest. The partnership was formed to hold title to certain commercial real estate in Ashland, Kentucky. The partnership acquired property which later was occupied by First American. The relationship between the two partners deteriorated when Osborne and Klepper's daughter were divorced. Subsequently, [**3] Osborne entered into negotiations with First American for the sale of the partnership property.

Osborne and First American consummated an agreement in December 1988. Osborne conveyed real estate owned by the partnership to First American for $ 3.5 million. Concurrently, First American entered into a contract with Debcon, Inc. ("Debcon"), a construction company wholly owned by Osborne. The construction contract provided that Debcon could earn up to $ 400,000 over a three year period for certain unspecified projects. Under this same contract, Debcon was guaranteed a net profit of $ 200,000, whether or not work actually was performed for First American.

In August 1988, Osborne commenced an arbitration proceeding against Klepper based on unrelated partnership matters. Upon learning of the construction contract with Debcon, Klepper asserted a counterclaim in that same arbitration. He alleged that Osborne breached his fiduciary duty to the partnership by entering into the construction contract with First American. Klepper believed that the contract price of the second agreement actually was consideration for the sale of the partnership's real estate. The arbitrators awarded Klepper $ [**4] 80,000, which represented his twenty-percent share of the construction contract with Debcon. The arbitrators then deducted from the $ 80,000 award what Klepper owed Osborne which left a balance for Klepper of $ 17,315.45. The award later was confirmed by the district court, and in this proceeding, Osborne has acknowledged that he has received full payment of the award. Osborne appealed the confirmation [*340] of the award to this Court. On May 8, 1990, the district court's judgment was affirmed. *Klepper v. Osborne, 902 F.2d 33 (6th Cir. 1990).*

On February 28, 1989, Klepper filed the instant complaint against First American. It alleged that First American tortiously interfered with the partnership agreement and further conspired with Osborne to defraud Klepper of his share of the construction contract with Debcon. The complaint sought $ 80,000 in compensatory damages plus attorney's fees and expenses totaling $ 5,000, and punitive damages of $ 500,000 due to the Bank's alleged "intentional, oppressive, fraudulent and malicious" conduct.

First American filed a motion for summary judgment asserting that, since Klepper already had recovered in the arbitration [**5] proceeding against Osborne the full amount which was owed to him, he was collaterally estopped from recovering compensatory damages in this action. In addition, First American asserted that Klepper could not recover punitive damages as a matter of law; and accordingly, that claim could not be used to satisfy the jurisdictional amount required for maintaining diversity actions in the federal court. First American accordingly asserted that the remaining claim for attorney's fees and incidental costs must be dismissed because the court lacked subject matter jurisdiction.

In a judgment entered October 13, 1989, the court granted First American's motion for summary judgment and dismissed Klepper's complaint. Since Klepper received one recovery in the arbitration against Osborne, the court held that the compensatory damage claim should be dismissed. The punitive damage claim was dismissed because Klepper failed to offer "clear and convincing proof" that First American acted with "oppression, fraud and malice" as required under Kentucky law. Having dismissed those claims, the court held that the remaining claim of $ 5,000 was insufficient in amount to confer subject matter jurisdiction.

[**6] II.

We turn first to the question whether the district court

had subject matter jurisdiction to hear the claim for punitive damages and the further claim for incidental damages and attorney's fees. Since summary judgment was granted on the punitive damage claim, the district court apparently found it had jurisdiction to hear that claim. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2713 (1983) *HN1*[⬆] ("If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action.").

The district court, however, held that it did not have jurisdiction to hear the claim for incidental damages and attorney's fees. It reasoned that, after granting summary judgment in favor of First American on the claims for compensatory and punitive damages, the remaining claim failed to satisfy the jurisdictional amount requirement of $ 10,000, which was the required amount in effect at the time the complaint was filed. *28 U.S.C. § 1332(a) (1982)*. To the extent that First American asserts that the district court did not have jurisdiction over the claims for punitive damages or incidental damages and attorney's fees, we disagree for **[**7]** the reasons set forth below.

*HN2*[⬆] In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 82 L. Ed. 845, 58 S. Ct. 586 (1938)*. When determining whether the amount in controversy has been satisfied, we examine the complaint at the time it was filed. *Worthams v. Atlanta Life Ins. Co., 533 F.2d 994, 997 (6th Cir. 1976)*. Jurisdiction, once established, cannot be destroyed by a subsequent change in events. *Id.* For example, "even if part of the claim is dismissed on a motion for summary judgment, thereby reducing plaintiff's claim below the requisite amount, the court retains jurisdiction to adjudicate the balance of the claim." 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3702 (1985). It is with these well-settled principles in **[*341]** mind that we review the holdings of the district court.

First, we review the district court's jurisdictional holding as to the punitive damage claim. *HN3*[⬆] In Kentucky, punitive damages are governed solely **[**8]** by statute. *Ky. Rev. Stat. § 411.184(5)*. The statute provides that "a plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." *Id.* at *§ 411.184(2)*. Klepper's complaint described the real estate transaction between Osborne and First American. He alleged that First American interfered with his contractual relationship with Osborne and conspired with Osborne to defraud him of partnership revenues. He further alleged that such conduct was "intentional, oppressive, fraudulent and malicious."

First American contends that our holding in *Sellers v. O'Connell, 701 F.2d 575 (6th Cir. 1983)*, requires that we not consider the punitive damage claim for jurisdictional purposes.

We decline to read our holding in *Sellers* as barring punitive damages in the computation of the jurisdictional amount. In *Sellers*, applying the law of the District of Columbia, we refused to include a claim for punitive damages in the calculation of the jurisdictional amount. *Sellers, supra, at 579*. Critical to our holding **[**9]** in *Sellers* was that the law of the District of Columbia did not favor punitive damages. *Id.* Indeed, the appellant in that case could find no authority supporting an award of punitive damages under those facts. *Sellers* stands for the general proposition that a court will find absence of jurisdictional amount to a legal certainty when state law bars recovery of the type of damages claimed. *Parmelee v. Ackerman, 252 F.2d 721, 722 (6th Cir. 1958)* (mental distress damages not includable in computation of jurisdictional amount when barred by state law).

By contrast, Kentucky expressly provides for punitive damages by statute. Despite the clear and convincing standard and the absence of decided cases under the statute, we cannot say at the jurisdictional stage that appellant could not recover punitive damages to a legal certainty. *Bell v. Preferred Life Assur. Soc., 320 U.S. 238, 240-41, 88 L. Ed. 15, 64 S. Ct. 5 (1943)*; *Wood v. Stark Tri-County Building Trades Council, 473 F.2d 272, 274 (6th Cir. 1973)*. Klepper's allegations, if properly proved, could have justified an award of punitive damages. *Bell, supra, 320 U.S. at 241*. **[**10]** Appellant's complaint is sufficient on the issue of punitive damages to warrant the court's exercise of subject matter jurisdiction.

Second, we turn to the question whether the district court had subject matter jurisdiction to entertain the claim for incidental damages and attorney's fees. It is well established that *HN4*[⬆] claims can be aggregated to satisfy the jurisdictional amount requirement. *Lemmon v. Cedar Point, Inc., 406 F.2d 94, 96 (6th Cir. 1969)*. Since the court had jurisdiction over the claims for compensatory and punitive damages at the time the complaint was filed, it also had jurisdiction over the

otherwise deficient $ 5,000 claim for incidental damages and attorney's fees as well. *Id.* It is of no moment that summary judgment subsequently was granted in favor of defendant on the claims for compensatory and punitive damages. HN5[ ] Once jurisdiction has properly attached, it cannot be ousted by subsequent events. Worthams, supra, 533 F.2d at 997. Accordingly, we hold that the district court erred in dismissing the claim for incidental damages and attorney's fees. We remand for a determination on the merits of the issues presented by that claim.

 **[\*\*11]**  III.

We turn next to the district court's award of summary judgment in favor of defendant on the compensatory and punitive damage claims.

HN6[ ] On an appeal from a summary judgment, we review the record de novo to determine whether there are genuine issues of material fact. Fed. R. Civ. P. 56(c). We assess the record in the light most favorable to the non-movant, drawing all reasonable inferences in its favor. *Matsushita* **[\*342]** *Elec.* Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The non-movant, in order to prevail, however, must show sufficient evidence to create a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The showing of a mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Where clear and convincing evidence is required to prove a claim, the court must examine the evidence and determine whether a jury could find for the plaintiff under **[\*\*12]** this more stringent standard. *Id. at 255-56*.

(A)

With these standards in mind, we turn to the district court's summary judgment holding on the compensatory damage claim. Appellant contends, without citing relevant case law, that since his compensatory damage claim was not finalized on appeal from the district court's judgment confirming the arbitration award, it did not bar the same claim in the current action. This contention is contrary to Kentucky law.

In Pierce v. Frito-Lay, Inc., 426 S.W.2d 439, 440 (Ky. 1968), the court held that HN7[ ] only satisfaction of an award against a joint tortfeasor could raise a bar precluding actions against other tortfeasors. While the arbitration award itself did not bar the commencement of the instant proceeding, it was clear that when the award subsequently was paid by Osborne, Klepper was effectively estopped from seeking a second recovery from First American. *Id.*; Penco, Inc. v. Detrex Chem. Indus., Inc., 672 S.W.2d 948, 951-52 (Ky. App. 1984).

We hold that the district court correctly granted summary judgment in favor of defendant on the compensatory damage claim.

(B)

This brings us **[\*\*13]** to the question whether appellant's claim for punitive damages was properly dismissed on the merits. Klepper contends that, contrary to the court's holdings, there was sufficient evidence to support a claim for punitive damages under Kentucky law. We disagree.

As stated above, the plaintiff must prove, by clear and convincing evidence, that the defendant acted with oppression, fraud or malice in order to recover punitive damages in Kentucky. Ky. Rev. Stat. § 411.184(2). The district court here found that Klepper failed to present sufficient evidence on the elements of oppression, fraud and malice to defeat First American's summary judgment motion. We address Klepper's allegations as to each element, evaluating each in light of the heightened standard of clear and convincing evidence as required by *Anderson*.

HN8[ ] Malice is defined, in relevant part, in the Kentucky statute as "conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff. . . ." Ky. Rev. Stat. § 411.184(1)(c). The district court refused to find malice based on Klepper's deposition testimony. When asked if he thought that First American directed malice or ill will **[\*\*14]** toward him, Klepper responded: "I don't think they directed malice or ill will toward me. . . ."

While we do not consider Klepper's subjective views on the presence or absence of malice as dispositive of that issue, we do agree with the ultimate holding of the district court on the malice issue. The sole evidence supporting Klepper's assertion of malice is the arbitration testimony of Richard Coriell, vice-president of First American. Coriell testified that the construction contract was proposed by the bank for two reasons. First, it was used as an "incentive" to complete the real estate transaction. Second, First American had a "valid

need to complete some construction or renovation of the building ". This scant evidence, even considered in the light most favorable to Klepper, could not overcome a motion for summary judgment. A reasonable jury could not find by clear and convincing evidence that defendant acted with malice. *Anderson, supra, 477 U.S. at 255-56*.

 [*343] Klepper also claims that First American acted with oppression toward him. **HN9**[⬆] Oppression is defined in the Kentucky statute as "conduct which is specifically intended by the defendant to subject **[**15]** the plaintiff to cruel and unjust hardship." *Ky. Rev. Stat. § 411.184(1)(a)*. The district court held that Klepper asserted no allegations of oppression. Klepper disputes this holding on several grounds.

Klepper points to his complaint which asserts in conclusory fashion that First American's actions were "oppressive, fraudulent and malicious". Klepper also points to the deposition where he testified, "I think their conduct was oppressive by way of its results to me." Klepper further points to Coriell's testimony which he asserts amounts to an admission that First American intended to subject him to cruel and unjust hardship. We decline to accept Klepper's conclusory allegations as sufficient to create a genuine issue of material fact under the more stringent, clear and convincing standard required for recovery of punitive damages in Kentucky. *Anderson, supra, 477 U.S. at 255-56*.

Finally, Klepper claims that First American's actions toward him were fraudulent. **HN10**[⬆] Fraud is defined in the statute as "an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." *Ky. Rev. [**16] Stat. § 411.184(1)(b)*.

Klepper relies principally on the sequence of negotiations for the sale of the property to support his contention of fraud. Coriell's testimony at the arbitration chronicled the negotiations. He testified that it was Osborne who first suggested that $ 3,500,000 be paid in cash and the remainder in some other form of consideration such as a consulting contract. First American made a counter offer suggesting that anything over $ 3,500,000 be guaranteed in the form of a construction contract. Ultimately, First American's suggestion became the basis of the agreement. Klepper surmises that this sequence of events and the mere fact that there was a separate construction agreement are sufficient to create a genuine issue of material fact.

Such evidence ordinarily might be sufficient to defeat a motion for summary judgment under a mere preponderance standard. Viewing the evidence in the light of the requirement of clear and convincing evidence, however, it is apparent that Klepper failed to present a genuine issue of material fact. *Anderson, supra, at 255-56*.

We hold that the district court correctly granted summary judgment in favor of defendant **[**17]** on the punitive damage claim.

(C)

Klepper also contends that the district court abused its discretion in granting summary judgment before sufficient time was allowed for discovery. True, Klepper had no opportunity to engage in discovery because the court stayed all discovery pending resolution of First American's summary judgment motion.

Normally, Klepper might have prevailed in his challenge of summary judgment on this ground. **HN11**[⬆] *Fed. R. Civ. P. 56(f)*, however, sets forth the method for opposing summary judgment based on insufficiency of discovery:

> "Should it appear, from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Klepper had the burden of showing, by affidavit, why he was not able to oppose the motion for summary judgment. *Emmons v. McLaughlin, 874 F.2d 351, 357 (6th Cir. 1989)*. Klepper failed to meet his burden by not presenting **[**18]** any affidavit as required under *Rule 56(f)*.

We hold that the district court did not abuse its discretion in granting summary judgment.

 [*344] IV.

To summarize:

We reverse the judgment of the district court to the extent that it dismissed the claim for incidental damages and attorney's fees based on lack of subject matter jurisdiction. We hold that once jurisdiction attached at the time the complaint was filed, the court was not ousted of such jurisdiction by a subsequent change in

events. We therefore remand the case with respect to that claim for a determination on the merits.

We affirm the judgment of the district court to the extent it granted summary judgment on the claims for compensatory and punitive damages.

Affirmed in part; reversed and remanded in part.

---

**End of Document**

Amira Genevieve Adel



Caution
As of: March 1, 2024 3:11 AM Z

# Marsh v. Associated Estates Realty Corp.

United States Court of Appeals for the Sixth Circuit

April 5, 2013, Filed

File Name: 13a0344n.06

No. 12-1594

**Reporter**
521 Fed. Appx. 460 *; 2013 U.S. App. LEXIS 7177 **; 2013 FED App. 0344N (6th Cir.); 117 Fair Empl. Prac. Cas. (BNA) 1587; 2013 WL 1395896

ROSEMARY MARSH, Plaintiff-Appellant, v. ASSOCIATED ESTATES REALTY CORP.; AERC OF *MICHIGAN*, LCC; AERC OAKS HAMPTON, LLC; and AERC OAKS, INC., Defendants-Appellees.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** [**1] On Appeal from the United States District Court for the Eastern District of *Michigan*.

*Marsh v. Associated Estates Realty Corp.*, 2012 U.S. Dist. LEXIS 48453 ( E.D. Mich., Apr. 5, 2012)

## Core Terms

scores, termination, shops, district court, age discrimination, phone, firing, direct evidence, video, employees, company policy, evaluations, recommended, leasing, grant summary judgment, alleged statement, prima facie case, identification, video-shop, violations, pretext, reasons, tenant, circumstantial evidence, summary judgment, apartments, deposition, non-moving, but-for

## Case Summary

### Procedural Posture

Appellant former employee appealed the order of the United States District Court for the Eastern District of *Michigan* that granted summary judgment to appellees, the former employer and three other corporate entities, in an action that alleged the employee was fired in violation of 29 U.S.C.S. § 623 of the Age Discrimination in Employment Act (ADEA) and Mich. Comp. Laws § 37.2202 of *Michigan*'s Elliot-Larsen Civil Rights Act (ELCRA).

### Overview

The court held that four alleged statements from a manager for the employer did not constitute direct evidence of age discrimination because most of the statements were not made in connection with a decision to fire the employee, and all the alleged statements were made by an individual who was not a decisionmaker with respect to the firing of employees. Assuming without deciding that the employee established a prima facie case under McDonnell Douglas, the court ruled that the employer presented a legitimate, nondiscriminatory reason for the employee's termination and that the employee did not successfully rebut that reason by demonstrating that it was pretextual. The employee could not establish pretext by citing the retention of other employees because the employee could point to no other employee who was not fired after so consistently and grossly falling short of the employer's testing requirements or so frequently violating company policy. The employee could not establish a violation of the ELCRA because she could not establish a prima facie case of age discrimination under the ADEA.

### Outcome
The order was affirmed.

## LexisNexis® Headnotes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

Civil Procedure > ... > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Scintilla Rule

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Legal Entitlement

*HN1*[ ] **Entitlement as Matter of Law, Appropriateness**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*. An appellate court reviews the grant of a motion for summary judgment de novo. The appellate court must construe all evidence and draw all inferences against the moving party. However, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. In this analysis, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

Business & Corporate Compliance > ... > Discrimination > Age Discrimination > Federal & State Interrelationships
Labor & Employment Law > Discrimination > Age Discrimination > Federal & State Interrelationships

Labor & Employment Law > ... > Age Discrimination > Evidence > Burdens of Proof

Labor & Employment Law > ... > Age Discrimination > Scope & Definitions > General Overview

Labor & Employment Law > ... > Age Discrimination > Evidence > Circumstantial Evidence

Labor & Employment Law > ... > Age Discrimination > Evidence > Direct Evidence

*HN2*[ ] **Age Discrimination, Federal & State Interrelationships**

The Age Discrimination in Employment Act (ADEA) prohibits an employer from taking an adverse employment action against an employee because of that employee's age. *29 U.S.C.S. § 623(a)*. Age discrimination claims made under the Elliot-Larsen Civil Rights Act are assessed using the same analytical framework as those made under the ADEA. A plaintiff may establish a violation of the ADEA by presenting either direct or circumstantial evidence. For evidence to qualify as direct, a factfinder must not need to draw any inferences in order to conclude that the challenged employment action violated the ADEA. If inferences are required, the evidence is properly classified as circumstantial, and the plaintiff must satisfy the additional demands of the McDonnell Douglas framework.

Evidence > Burdens of Proof > Preponderance of Evidence

Labor & Employment Law > ... > Age Discrimination > Evidence > Burdens of Proof

Labor & Employment Law > ... > Age Discrimination > Evidence > Circumstantial Evidence

Labor & Employment Law > ... > Age Discrimination > Evidence > Direct Evidence

*HN3*[ ] **Burdens of Proof, Preponderance of Evidence**

The motivating-factor standard, applicable in Title VII of the Civil Rights Act of 1964 cases, is not appropriate in the context of the Age Discrimination in Employment Act (ADEA). Instead, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the but-for cause of the challenged employer decision. Thus, the plaintiff must provide facts that, if believed, would allow the factfinder to conclude that age was the but-for cause of the

challenged adverse employment action.

Labor & Employment Law > ... > Age Discrimination > Evidence > Burdens of Proof

Labor & Employment Law > ... > Age Discrimination > Defenses > Burdens of Proof

Labor & Employment Law > ... > Age Discrimination > Evidence > Circumstantial Evidence

**HN4**[ ] **Evidence, Burdens of Proof**

As to an age discrimination claim, if a plaintiff relies on circumstantial, rather than direct, evidence, she may take advantage of the burden-shifting framework of McDonnell Douglas, imported from Title VII of the Civil Rights Act of 1964 cases. Under this framework, a plaintiff may establish a prima facie case of age discrimination by showing: (1) she was at least 40 years old at the time of the alleged discrimination, (2) she was subjected to an adverse employment action, (3) she was otherwise qualified for the position, and (4) she was rejected and someone outside the protected class was selected. If the plaintiff makes this showing, the burden of production then shifts to the defendant to articulate a nondiscriminatory reason for its action. If the defendant meets this burden, the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was mere pretext for intentional age discrimination.

Labor & Employment Law > ... > Age Discrimination > Evidence > Burdens of Proof

**HN5**[ ] **Evidence, Burdens of Proof**

As to an age discrimination claim, statements unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus.

Labor & Employment Law > ... > Age Discrimination > Evidence > Direct Evidence

**HN6**[ ] **Evidence, Direct Evidence**

As to an age discrimination claim, when an individual is not a decisionmaker in connection with the discharges, whatever statements he made are irrelevant and thus will not constitute direct evidence. Any discriminatory statements must come from decisionmakers to constitute evidence of discrimination.

Labor & Employment Law > ... > Age Discrimination > Evidence > Burdens of Proof

**HN7**[ ] **Evidence, Burdens of Proof**

As to an age discrimination claim, under the Sixth Circuit's honest belief rule, as long as an employer had an honest belief in its proffered nondiscriminatory reason, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.

Business & Corporate Compliance > ... > Discrimination > Age Discrimination > Federal & State Interrelationships
Labor & Employment Law > Discrimination > Age Discrimination > Federal & State Interrelationships

Labor & Employment Law > ... > Age Discrimination > Evidence > Burdens of Proof

**HN8**[ ] **Age Discrimination, Federal & State Interrelationships**

If a plaintiff has failed to present evidence sufficient to establish the elements of an Age Discrimination in Employment Act claim, he has similarly failed to establish a prima facie case under the Elliot-Larsen Civil Rights Act.

**Counsel:** For ROSEMARY MARSH, Plaintiff - Appellant: Nanette L. Cortese, Law Offices, Southfield, **MI**.

For ASSOCIATED ESTATES REALTY CORP., AERC OF **MICHIGAN**, LLC, AERC OAKS HAMPTON, LLC, AERC OAKS, INCORPORATED, Defendant - Appellees: Emily Marie Petroski, Kimberly A. Yourchock, Jackson Lewis, Southfield, **MI**; James M. Stone, Jackson Lewis, Cleveland, OH.

**Judges:** Before: BOGGS, GIBBONS, and COOK, Circuit Judges.

**Opinion by:** BOGGS

# Opinion

[*461] BOGGS, Circuit Judge. Plaintiff-appellant Rosemary Marsh appeals the district court's order granting summary judgment in favor of defendant-appellee Associated Estates Realty Corp. (AERC) of *Michigan*, as well as three other AERC corporate entities. Marsh sued in the district court after AERC of *Michigan* fired her, alleging violations of the Age Discrimination in Employment Act (ADEA), *29 U.S.C. § 623*, and *Michigan*'s Elliot-Larsen Civil Rights Act (ELCRA), *Mich. Comp. Laws § 37.2202*. For the reasons that follow, we affirm the district court's order.

**I**

Below is a clear and thorough statement of the facts as provided in the district court's Order Granting Defendants' Motion for Summary Judgment. No party disputes [**2] the following rendition of the events giving rise to this case:

> Marsh was hired as a leasing consultant by AERC of *Michigan* in March 2004. She was interviewed and hired by Pam Carson, a property manager who also served as her supervisor. Approximately one year later, she voluntarily left her position to pursue employment opportunities elsewhere. All of the parties agree that she left the Company on good terms and that Carson told her that she "could always come back" to AERC of *Michigan*. After Carson contacted Marsh and asked if she would like to return, she resumed her position with AERC of *Michigan* in May 2005. However, Marsh's tenure of employment was shortened when her employment was involuntarily terminated in December of 2007. Marsh was sixty years old when she was initially hired, sixty-one years old when she was rehired, and sixty-three years old when she was terminated.
>
> During her tenure at AERC of *Michigan*, Marsh primarily worked as a leasing consultant at The Oaks at Hampton, where her primary job responsibility was to facilitate the rental of the apartments (i.e., showing apartments [*462] to prospective tenants, obtaining leases, marketing and promotion, and assisting residents). [**3] The evidence reflects—and the Defendants do not contest—that she was effective in this position when performance is measured in terms of the number of apartments leased.
>
> However, AERC of *Michigan* also uses additional metrics to evaluate the performance of its employees, such as the use of a third-party contractor who conducts anonymous telephone and video evaluations of a leasing consultants' sales techniques and customer communication skills. The contractor scores these so-called "phone shops" and "video shops" on a one-hundred-point scale, which is broken down into numerous sub-components. Leasing consultants are expected to achieve a score of at least ninety (90) on the "telephone shops" and at least eighty (80) on the "video shops." This expectation is conveyed to the employees in an "Audio and Video Recording Acknowledgment" form, which advises them that (1) they may be recorded and evaluated, and (2) these evaluations "may be used for rewarding good performance, coaching for improved performance, and for disciplinary purposes, up to and including termination of employment." Despite acknowledging that she received and signed this form, Marsh insists that she had been repeatedly [**4] assured that these "shops" would be used only to assist the employees in improving their job performances and not for such disciplinary measures as demotion or discharge.
>
> Marsh's scores on these evaluations were considerably lower than expectations. Over the course of her employment, she received scores of forty-one and fifty-six on the "video shops," and eighty-two, forty-five, FN2 forty-one, fifty-seven, thirty-five, eighty-three, eighty, one hundred, fifty, and seventy-six on the "phone shops." Thus, out of twelve total evaluations, she met expectations only once. In a "video shop" in February 2006, Marsh failed to obtain the identification of an (acting) prospective tenant prior to providing a tour of the apartment. This failure runs counter to AERC of *Michigan*'s personal safety policy, which provides that government-issued identification must be obtained from each individual of legal age prior to embarking upon a tour of the facilities. The policy also states that "[e]veryone must be treated in a fair, equal manner; therefore, consistency when administering this policy is essential." On March 16, 2007, Carson and Diane Shimoura (another property manager) sent Marsh a memorandum [**5] which indicated that (1) all three of her "phone shop" evaluations (eighty-two, forty-five (disregarded), and forty-one) during the preceding

six-month period were unacceptable, and (2) her scores must significantly improve. Several days later (March 20th), she received a "phone shop" score of fifty-seven. During the following week (*April* 2nd), she received another memorandum advising her that she was required to take several immediate steps to improve her scores. On *April* 17th, Shimoura sent her a written warning which specified that "future phone shops need to be within acceptable range." Marsh was also advised that, if she failed satisfy this requirement, "additional corrective action, up to and including termination[,] will occur." She subsequently received three unacceptable scores (eighty-three, eighty, and fifty)—in addition to her one acceptable score of one hundred—in the next five months.

FN2 This score came around the same time that Marsh had received a diagnosis **[\*463]** of kidney cancer and was disregarded by her employer.

Employees of AERC of *Michigan* are also evaluated through annual performance reviews. In January 2005, Marsh was given an overall score of two out of four ("Meets **[\*\*6]** basic expectations; requires improvement in some areas."), with sub-scores of two in several areas (communication, creativity, customer satisfaction, initiative, and job knowledge) and three in others (dependability, planning and organization, and teamwork). Later that year, she was issued an employee reprimand in which several areas for improvement were highlighted. In 2006, her overall performance review score was three out of four ("Generally satisfies expectations and recognizes areas for improvement."), based on sub-scores of two in several areas (communication, creativity, job knowledge, and planning and organizing), three in others (customer satisfaction, initiative, and teamwork), and a four in one (dependability). Her 2007 review showed improvement, with an overall score of three and only one sub-score of two (creativity).

In October 2007, AERC of *Michigan* employed Amy Horn to serve as its property manager at The Oaks at Hampton, and Carson was promoted to a position in which she no longer had day-to[-]day responsibilities at that location. In November 2007, Marsh received a "video shop" score of fifty-six and, once again, failed to obtain the requisite identification prior **[\*\*7]** to providing a prospective tenant with a tour through the facilities. According to the affidavits that were submitted by AERC of *Michigan*, Miria Rabideau (regional vice president of AERC of *Michigan*) contacted Carol Screngi (human resources generalist for AERC) to express her concerns about Marsh's work performance, such as her low "phone shop" scores and her violations of the Company's identification policy.

After reviewing Marsh's performance documents, Screngi recommended that Rabideau and Carson place Marsh on final probation and provide her a "Performance Development and Improvement Form" ("PDIF"). She also advised them to schedule additional "phone shops" and "video shops" for Marsh during the month of March so that her compliance with the PDIF could be assessed. After Rabideau approved this course of action, Carson relayed this recommendation to Horn, who, on November 29, 2007, met with Marsh to present her the PDIF.

The PDIF (1) indicated that Marsh was being placed on final probation, (2) identified several areas in which her performance had not met Company standards, and (3) required her to, among other things, always obtain the identification of every prospective tenant prior **[\*\*8]** to every tour and attain a score at least ninety (90) on all future "video shops" and "phone shops." This form also indicated that her failure to achieve these objectives would result in "additional action, up to and including termination."

On December *5th*, Marsh received a phone shop score of seventy-six, which was reported by Horn to Carson. On December 6th, Cornelius Young (a leasing manager with AERC of *Michigan*) notified Horn via e-mail that Marsh had (1) violated a company policy against holding apartment units without receiving deposits in advance, and (2) shown particular apartment units to tenants, contrary to an instruction that they not be shown. On December 10th, Horn forwarded this e-mail to Carson and inquired as to her "thoughts on moving forward." Carson recommended that **[\*464]** Marsh's employment be terminated—a decision that was approved by Rabideau and Screngi.

On December 12th, Horn met with Marsh to advise her of her termination. Marsh contends that Horn stated during this meeting, "I think you're getting too old for your job because of that phone shop" or "I think you're just getting a little too old for your job." Marsh also alleges that Horn directed several

derogatory [**9] age-related comments toward her during the two months of her supervision. Specifically, she states that Horn (1) called her "Old Rose" on "a couple" of occasions, (2) had ma[d]e statements to the effect of "you're slipping, you're getting old" when anybody forgot something, and (3) inquired on one occasion when Marsh had to put paper in the bottom drawer of the photocopier if she was "too old to get down there."

On December 29, 2007, Marsh completed an intake questionnaire with the Equal Employment [Opportunity] Commission ("EEOC"), and on January 2, 2008, she filed a discrimination charge. On June 3, 2010, the EEOC issued its finding of reasonable cause to believe that she had been discharged in violation of the ADEA. When efforts at settlement failed, the EEOC issued a "right-to-sue" letter on July 15th. Marsh timely filed this lawsuit on October 13th.

Dist. Ct. Op. at 1-6 (internal citations omitted).

After discovery, AERC of *Michigan* moved for summary judgment. In addition, the three other AERC corporate entities moved to dismiss themselves from the litigation, arguing that they were not Marsh's employer and could not be held liable under the "single employer" doctrine. The district [**10] court, after explaining the law used to analyze ADEA and ELCRA claims, found that: (1) Marsh had not presented any direct evidence of age discrimination; and (2) Marsh also could not present sufficient circumstantial evidence of age discrimination under the framework of *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*. Accordingly, the court declined to address the motion to dismiss and instead granted summary judgment for all defendants.

With regard to Marsh's purported direct evidence of age discrimination—four statements allegedly made by Horn—the district court held that these statements did not demonstrate that Marsh's termination occurred because of age. The district court held that three of the statements had no causal connection to AERC of *Michigan*'s decision to fire Marsh, but rather were made in contexts totally distinct from Marsh's termination. The district court noted that at most, these alleged statements permitted the *inference* that Marsh's termination was due to age discrimination, and thus did not constitute direct evidence. In addition, while Marsh insisted that Horn's fourth alleged comment—that Marsh was getting too old for her job—was made at the time Horn [**11] informed Marsh of her termination, the district court found that this was not direct evidence that Marsh was fired because of her age, as Horn was not the decision-maker with respect to firing decisions.

Moving to Marsh's circumstantial evidence of age discrimination, the district court found that Marsh had established a prima facie case under *McDonnell Douglas.* Nonetheless, it held that AERC of *Michigan* had presented legitimate, nondiscriminatory reasons for firing Marsh—that she had repeatedly received unacceptable performance-testing (phone-shop and video-shop) scores and had violated several company policies. The district court held [*465] that Marsh could not raise a genuine issue of material fact that these reasons were pretextual and ruled that Marsh could not meet her evidentiary burden under the *McDonnell Douglas* framework.

Given that Marsh failed to provide direct or circumstantial evidence that the legitimate proffered reason was pretext for age discrimination by AERC of *Michigan*, the district court granted AERC of *Michigan*'s motion for summary judgment. In addition, the court, rather than considering the motion to dismiss submitted by the other three AERC corporate entities, simply [**12] granted summary judgment for them as well.

II

*HN1*[↑] Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. This court reviews the grant of a motion for summary judgment de novo. *Hirsch v. CSX Transp., Inc., 656 F.3d 359, 362 (6th Cir. 2011)*. We must construe all evidence and draw all inferences against the moving party. *Martin v. Cincinnati Gas & Elec. Co., 561 F.3d 439, 443 (6th Cir. 2009)*. However, "'[t]he mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].'" *Shropshire v. Laidlaw Transit, Inc., 550 F.3d 570, 576 (6th Cir. 2008)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))*. In this analysis, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*.

III

## A

**HN2**[⬆] The ADEA prohibits an employer from taking an adverse employment action against an employee because of that [**13] employee's age. *See 29 U.S.C. § 623(a)*. Age discrimination claims made under the ELCRA are assessed using the same analytical framework as those made under the ADEA. *Bondurant v. Air Line Pilots Ass'n, Int'l, 679 F.3d 386, 394 (6th Cir. 2012)*. A plaintiff may establish a violation of the ADEA by presenting either direct or circumstantial evidence. *See Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 811 (6th Cir. 2011)*. As the district court correctly noted, for evidence to qualify as direct, a factfinder must not need to "'draw any inferences in order to conclude that the challenged employment action'" violated the ADEA. Dist. Ct. Op. at 8 (quoting *Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003))*. If inferences are required, the evidence is properly classified as circumstantial, and the plaintiff must satisfy the additional demands of the *McDonnell Douglas* framework.

### 1

Here, the district court did not state the current standard when describing what the proffered evidence must demonstrate in order to establish a violation under the ADEA or the ELCRA. The district court stated that a plaintiff must provide evidence, "which, 'if believed, requires the conclusion that unlawful discrimination [**14] was at least *a motivating factor* in the employer's actions.'" *Ibid.* (emphasis added) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999))*. However, ten years after *Jacklyn*, the Supreme Court clarified that **HN3**[⬆] the motivating-factor standard, applicable in Title VII cases, was not [*466] appropriate in the context of the ADEA. *See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)*. Instead, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was *the 'but-for' cause* of the challenged employer decision." *Id. at 177-78* (emphasis added); *see also Geiger v. Tower Auto., 579 F.3d 614, 621 (6th Cir. 2009)* ("*Gross* enunciated the correct standard for ADEA claims as whether the plaintiff has proven 'by a preponderance of the evidence . . . that age was the "but-for" cause of the challenged employer decision.'" (quoting *Gross, 557 U.S. at 177-78*)). Thus, the plaintiff must provide facts that, if believed, would allow the factfinder to conclude that age was the but-for cause of the challenged adverse employment action.

### 2

**HN4**[⬆] If a plaintiff relies on circumstantial, rather than direct, evidence, she [**15] may take advantage of the burden-shifting framework of *McDonnell Douglas*, imported from Title VII cases. *Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012)*. Under this framework, a plaintiff may establish a prima facie case of age discrimination by showing: "(1) [s]he was at least 40 years old at the time of the alleged discrimination, (2) [s]he was subjected to an adverse employment action, (3) [s]he was otherwise qualified for the position, and (4) [s]he was rejected and someone outside the protected class was selected." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010)*. If the plaintiff makes this showing, "the burden of production [then] shifts to the defendant to articulate a nondiscriminatory reason for its action." *Ibid.* If the defendant meets this burden, "the burden of production shifts back to the plaintiff to show that the [defendant's] proffered reason was mere pretext for intentional age discrimination." *Ibid.*

## B

On appeal, Marsh does not appear to press the argument that Horn's alleged statements constitute direct evidence of an ADEA violation. Rather, Marsh mentions Horn's statements while attempting to establish pretext during [**16] the final phases of the *McDonnell Douglas* analysis. *See* Appellant Br. *at 20-21*. Even so, we agree with the district court that Horn's four alleged statements did not constitute direct evidence of age discrimination.

Marsh alleged that Horn: (1) called her "Old Rose" several times prior to her termination; (2) made statements to the effect of "you're slipping, you're getting old" when other co-workers were forgetful; (3) once asked Marsh if she was "too old to get down there" when she bent down to replace paper in the photocopier; and (4) at the time of Marsh's firing, said, "I think you're getting too old for your job because of that phone shop" or "I think you're just getting a little too old for your job." As the district court noted, the first three alleged statements were not made in connection with a decision to fire Marsh. At the most, these statements show only that Horn felt that Marsh was an elderly

individual and that some stage of old age was correlated with a decrease in job performance. To hold that age was the but-for cause of Marsh's termination, a factfinder would still have to infer from these statements that Horn's supposed disdain for the elderly led her to fire Marsh. **[\*\*17]** Thus, these statements do not constitute direct evidence of age discrimination. *See* Geiger, 579 F.3d at 621 (holding that **HN5**[↑] statements "unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus" **[\*467]** (alteration in original) (internal quotation marks omitted)).

In addition, all four alleged statements were made by an individual who was not a decision-maker with respect to the firing of AERC employees. Thus, even though Horn's fourth statement was supposedly made during the decisional process, i.e., at the time of Marsh's firing, that statement, as well as the other three, cannot constitute direct evidence that AERC of *Michigan* engaged in age discrimination when it terminated Marsh. *See* Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 550 (6th Cir. 2004) (holding that **HN6**[↑] when an individual is not "a decision-maker in connection with the discharges[,] . . . whatever statements he made are irrelevant" and thus "will not constitute direct evidence"); *see also* Geiger, 579 F.3d at 620-21 (noting that "[a]ny discriminatory statements must come from decisionmakers to constitute evidence of discrimination"). [1]

Marsh contests the fact that Horn was not a decision-maker and argues that "[t]he lower Court weighed the evidence and essentially made a fact-finding when it determined that Amy Horn was not the decision maker." Appellant Br. at 10. While it is true that, on a motion for summary judgment, we take all facts in the light most favorable to the non-moving party, Marsh has not produced *any* concrete evidence that Horn was indeed a decision-maker. There is nothing in the record that indicates that Horn had any input in the decision to fire Marsh. The only citations Marsh provides to support her claim that Horn **[\*\*19]** was a decision-maker are the answers of defendants to EEOC interrogatories and her own deposition testimony.

In the interrogatory answers, AERC nowhere specifically indicated that Horn had the authority to make firing decisions, but rather listed Horn as one of four individuals who "recommended Claimant's discipline, demotion, and/or discharge." This statement does not indicate that Horn had any decision-making power (as opposed to being one of several recommenders) and is completely consistent with AERC's assertion that Horn merely passed along independently generated reports of Marsh's inadequate performance and that individuals higher up the chain of command, including Rabideau, Carson, and Screngi, made the ultimate decision to fire Marsh, as recited *supra* at p. 4. In fact, immediately after the interrogatory answer that Marsh cites, AERC submitted another answer indicating that Rabideau was the only individual "who made the final decision to discipline, demote, and/or discharge Claimant," further supporting AERC's position that Horn was not a decision-maker.

With respect to Marsh's deposition, in response to a question about who made the decision to terminate her, Marsh simply states: **[\*\*20]** "I have no idea. I thought it was coming from Amy [Horn] because she says, I've decided to terminate you as of today, right now." At the most, this statement indicates that Marsh did not affirmatively know who made the decision to fire her but felt that Horn could possibly have been the decision-maker given comments that Horn allegedly made at the time of Marsh's firing. AERC of *Michigan*, however, **[\*468]** has submitted depositions from both Carson and Rabideau indicating that Carson recommended Marsh's termination and that Rabideau was the one who ultimately approved this decision. In the face of this evidence, Marsh's unfounded speculation, supported by no concrete proof, does not raise a genuine dispute of material fact.

As we have frequently stated, "'[t]he mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].'" Shropshire, 550 F.3d at 576 (quoting Anderson, 477 U.S. at 252). Marsh has failed to cite any evidence in the record that would allow a jury to reasonably find that Horn made—or even had the power to make—a decision to terminate her **[\*\*21]** employment, while AERC has provided

---

[1] Although the district **[\*\*18]** court mistakenly used the motivating-factor language rather than the but-for language when outlining what a plaintiff must demonstrate to prove a violation of the ADEA, *see supra* subsection III.A.1, this error had no effect on the district court's ultimate analysis. Because the district court found that the statements at issue did not constitute direct evidence, both because most of them were unrelated to Marsh's termination and all of them were made by a non-decision-maker, it never evaluated whether these statements established that age was the but-for cause of Marsh's discharge.

documentation indicating that Carson recommended the termination decision and that it was approved by Rabideau. Thus, the district court properly disregarded Marsh's unsupported claim to the contrary and found that Horn's statements did not constitute direct evidence that AERC of *Michigan* engaged in age discrimination.

### C

The district court also properly held that Marsh failed to satisfy the requirements of the *McDonnell Douglas* framework and thus could not establish circumstantial evidence of age discrimination. The court first held that Marsh had established a prima facie case because she was over 40 and thus within the protected class, she had been terminated, she was qualified for her position, and she was replaced by a substantially younger individual, Marla Stuckey, age 26.

Assuming without deciding that Marsh established a prima facie case under *McDonnell Douglas*, we hold that AERC of *Michigan* presented a legitimate, nondiscriminatory reason for Marsh's termination and that Marsh did not successfully rebut that reason by demonstrating that it was pretextual. AERC of *Michigan* claims that it discharged Marsh as a result of her unacceptably low phone- [**22] and video-shop scores and her several violations of company policies. Appellee Br. at 37-38. Marsh does not contest her actual phone- and video-shop scores and concedes that these scores were lower than those required by AERC and that they were compiled not by Horn, but by independent third-party investigators, who Marsh admits expressed no discriminatory animus towards her. Nor does Marsh dispute that she violated company policy during two different video-shops—again, conducted by independent third parties—when she failed to obtain a prospective tenant's identification prior to providing a tour of the apartment facilities. Marsh does contest the other alleged violations of company policy that were reported in an email by Young, i.e., that she held apartment units without receiving advance deposits and that she showed certain apartment units to tenants contrary to an instruction that they not be shown. Regardless of whether Young's report was true, however, Marsh has presented no evidence that those involved in her firing did not reasonably believe it to be true. Thus, *HN7*[↑] under this circuit's "honest belief" rule, "as long as [AERC of *Michigan* had] an honest belief in its proffered nondiscriminatory [**23] reason . . . , the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001)*.

Moving to the bulk of Marsh's pretext argument, Marsh insists that a number of [*469] other employees received phone- and video-shop scores below AERC of *Michigan*'s target levels (90 for phone-shops and 80 for video-shops) and thus that these targets were unenforced standards used to conceal discrimination. As the district court astutely noted, however, all the employees to whom Marsh refers, while having received a few scores below the prescribed targets, either also received a number of high passing scores or, while scoring below the targets, still scored well above Marsh in absolute terms. Marsh cites no employee who consistently received scores in the forties and fifties or who was tested twelve times and passed only once. Additionally, Marsh can point to no employee retained by AERC of *Michigan* after engaging in the violations of company policy ascribed to her.[2] In sum, Marsh can point to no other employee who was not fired after so consistently and grossly falling short AERC [**24] of *Michigan*'s testing requirements or so frequently violating company policy. Thus, she cannot establish pretext by citing the retention of other employees.

Finally, Marsh asserts that Horn's alleged age-related statements, discussed above, demonstrate that AERC of *Michigan*'s proposed reasons for her termination are a mere pretext used to mask age discrimination. As discussed *supra* in Section III.B, however, Marsh cannot demonstrate that these alleged comments were made by a decision-maker or that the individuals with the power to fire her harbored any discriminatory animus. Thus, the alleged statements of an individual with no authority to fire Marsh cannot demonstrate that AERC of *Michigan* considered Marsh's age when firing her, much [**25] less that AERC of *Michigan*'s espoused reasons were pretextual and that age was actually the but-for cause of Marsh's termination, as required by *Gross*.

### D

---

[2] Marsh also tangentially argues that any consideration of the phone- and video-shop scores was error because they constitute hearsay. However, these reports were not introduced to prove the truth of the matters asserted therein, but rather to demonstrate the state of mind of AERC of *Michigan*'s decision-makers when they fired Marsh, and thus they do not constitute hearsay. See *Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 598 (6th Cir. 2007)*.

Finally, because Marsh could not establish a prima facie case of age discrimination under the ADEA, the district court correctly held that she also could not establish a violation of the ELCRA and properly granted summary judgment to defendants on Marsh's state-law claim. See Geiger, 579 F.3d at 626 (HN8[↑] ] "Because [plaintiff] has failed to present evidence sufficient to establish the elements of an ADEA claim, he has similarly failed to establish a *prima facie* case under the ELCRA."). In addition, given that Marsh could not demonstrate that AERC of **Michigan** violated the ADEA, it was appropriate for the district court to grant summary judgment for the other three AERC corporate entities as well rather than engaging in an analysis of whether they qualified as Marsh's employer.

**IV**

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to all defendants.

---

**End of Document**

Amira Genevieve Adel